IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| CLO VIRTUAL FASHION INC., § <br> Plaintiff, § <br> § <br> v. § <br> § <br> ZHEJIANG LINGDI DIGITAL § <br> TECHNOLOGY CO., LTD. § <br> (D/B/A LINCTEX), § <br> Defendant. § | Civil Action No. 2:23-cv-00274-JRG-RSP |

**MEMORANDUM ORDER**

Before the Court is the Motion to Strike Portions of the Expert Reports of Muthu Govindaraj, filed by Defendant Linctex. **Dkt. No. 103; Dkt. No. 273**. The motion also contends that the Court should strike sections Plaintiff's November 22, 2024, amended infringement contentions. For the reasons discussed below, the Motion is **GRANTED IN PART**.

### I.   BACKGROUND

Plaintiff CLO asserts that Defendant infringes three of its patents: U.S. Patent Nos. 10,733,773; 11,410,355; and 11,222,448. Dkt. No.1 at 2. On December 31, 2024, Defendant filed its Motion seeking to strike portions of Dr. Govindaraj's opening report on a number of grounds. *See generally* Dkt. No. 103.

Following oral argument and a review of the relevant filings, the Court found that Defendant was no longer bound (based on a late change in the infringement contentions) by the previously made representation to Plaintiff that Executable 194 was representative of Executable 195 with respect to the relevant patented features. *See* Dkt. No. 229 at 2-3.

Because of the consequences flowing from this (as well as from other issues) with respect to the instant Motion, at a May 23, 2025 hearing, the Court gave leave to Plaintiff to serve a

supplement to Dr. Govindaraj's report and for the Parties to file supplemental briefing on this supplemental report. Dkt. No. 269.

On May 30, 2025, Defendant moved to strike Dr. Govindaraj's supplemental report. *See generally* Dkt. No. 273.

## II. APPLICABLE LAW

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gatekeeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

Despite the above, however, "even if testimony is reliable, it may still be excluded if it relies on information that violates the [Federal] [R]ules [of Civil Procedure]." *Estech Sys. IP, LLC v. Carvana LLC*, 2023 WL 3292881, at *2 (E.D. Tex. May 5, 2023).

### III. ANALYSIS

**A. Executable 195: Plaintiff's November 22, 2024 Infringement Contentions and Dr. Govindaraj's Infringement Opinions**

#### 1. The Original Briefing

In the Motion, Defendant argues that Plaintiff's November 22, 2024 Infringement Contentions identifying Executable 195 as an accused product were untimely and should be

3

stricken and that, by that same token, Dr. Govindaraj's infringement opinions based on Executable 195 constitute a new infringement theory and should also be excluded. Dkt. No. 103 at 7.

"When confronted with a violation of Rule 26, Rule 37 grants district courts the authority to exclude untimely information." *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, No. 2:17-CV-00651-JRG, 2019 WL 2267212, at *3 (E.D. Tex. May 28, 2019) (citing Fed. R. Civ. P. 37(c)(1)). Four factors guide the Court's exercise of discretion in evaluating whether to exclude evidence under Rule 37. *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 280 (5th Cir. 2009). Those factors are: "(1) [The untimely party's] explanation for its failure to disclose . . . , (2) the importance of the evidence, (3) the potential prejudice to [the objecting party] in allowing the evidence, and (4) the availability of a continuance." *Id.*

As to the first factor: Defendant asserts that it was served with the November 22, 2024 Infringement Contentions five minutes before the midnight deadline on the day fact discovery closed. Dkt. No. 103 at 3. It contends that this was the first time that Plaintiff identified Executable 195 as an accused instrumentality. *Id.* Defendant further asserts that it had provided Plaintiff with executable versions of 193, 194, and 195 in February 2024. *Id.* at 2, 7. Therefore, Defendant contends, Plaintiff has no excuse for being so late in accusing 195, since it had the executable for 195 for over five months before serving its earlier July 26, 2024 contentions. *Id.* at 7-8.

As to the second factor: Defendant argues that "the late identification of Executable 195 is highly important as it pertains to the scope and time period of CLO's infringement case." Dkt. No. 103 at 8. However, if the evidence is important, this weighs against striking it. See e.g. *Uniloc*, No. 2:17-CV-00651-JRG, 2019 WL 2267212, at *7-8 ("Even though the damages evidence is 'clearly important' to Uniloc . . . that fact alone is not sufficient to *avoid* exclusion of the evidence." (emphasis added)). Returning to its arguments, Defendant contends that "without identifying

4

Executable 195 as an accused product, CLO's infringement allegations cannot go beyond December 2023, when Executable 195 was released." Dkt. No. 103 at 8. It asserts that, because the asserted patents were issued in 2020 and 2022, the time period of alleged infringement would be greatly reduced: "CLO's expert admitted in his opening report, CLO does not accuse any Style3D versions after July 2023 as infringing the '448 patent" but "by way of its late addition of Executable 195 to the accused products, CLO's expert opined that Executable 195 and future versions of Style3D would infringe the '773 and '355 patents." *Id.* (citing Dkt. No. 103-8 at ¶¶48, 129 (internal quotations omitted).

As to the third factor: Defendant argues that "allowing [Plaintiff's] late identification of Executable 195 to stand would be highly prejudicial" to Defendant because the updated contentions were served five minutes before the deadline and, thus, Defendant was deprived of an opportunity to oppose or move to compel discovery on this new infringement allegation. *Id.*

As to the fourth factor: neither party seeks a continuance (*See* Dkt. No. 103 at 9; *see also* Dkt. No. 130), nor does the Court find a continuance would be appropriate since this case is on the eve of trial (Dkt. No. 178 at 1).

In response to all of the above, Plaintiff argues that, despite repeated prompting, Defendant never produced the source code for Executable 195. Plaintiff asserts that this hampered its efforts to determine if 195 infringed. Without addressing the four factors outlined above, it then cites to the Court's decision in *Multimedia* to show that striking is inappropriate. Dkt. No. 130 at 5 (citing *Multimedia Technologies Pte. Ltd. v. LG Electronics Inc. and LG Electronics USA, Inc.*, Case No. 2:22-cv-00494, Dkt. No. 224, 2024 WL 5247141 (E.D. Tex. 2024)).

Plaintiff's citation to *Multimedia* is unavailing, as the facts in that case were quite different from those of the instant matter. Plaintiff argues that "the Court denied defendant's motion to strike

5

plaintiff's expert opinions and found that one exemplary version in the plaintiff's infringement contentions is sufficient notice for plaintiff's expert to accuse seven different versions in the infringement expert report." Dkt. No. 130 at 5 (citing *Multimedia*, Case No. 2:22-cv-00494, Dkt. No. 224, 2024 WL 5247141, at *5). Specifically, Plaintiff argues that the defendants there asserted that several of the webOS versions should be stricken because "only one version—either webOS 3.5 or 5.05—appeared in plaintiff's infringement contentions, but that the infringement report accused seven different versions." However, "Plaintiff in *Multimedia* responded that (1) the webOS version which appears in its infringement contentions is an exemplar and representative of the other versions accused; (2) plaintiff supplemented its contentions to specifically identify all webOS versions at issue; and (3) the differences between the different versions vis-à-vis functionality is insignificant." *Id.* at 5-6 (citing *Multimedia*, Case No. 2:22-cv-00494-JRG-RSP, Dkt. No. 224, 2024 WL 5247141, at *5). Plaintiff asserts that the Court agreed, did not strike, and that the instant situation is identical. *Id.* at 6.

What Plaintiff here fails to consider is that the Court also found that the plaintiff in *Multimedia* had properly identified all seven webOS versions at issue in its supplement to its Infringement Contentions which was served months before the end of discovery (*Multimedia Techs. Pte. Ltd. v. LG Elecs. Inc.*, 2024 WL 5247141 (E.D. Tex. 2024) at *5-6), whereas Plaintiff here did not do so until five minutes before the deadline. Plaintiff's other arguments are similarly unpersuasive.[1]

Returning to the four-factor analysis: the Court finds that the first factor weighs heavily in favor of striking. Plaintiff has failed to articulate a valid reason why possession of the executable version of 195 (rather than its source code) for five months would not, with reasonable diligence,

---

[1] For these same reasons, Plaintiff's failure to properly accuse Executable 195 as an infringing product remains without excuse. *See infra* Section III.A.2.

6

have allowed Plaintiff to identify whether 195 infringed. Further, to the extent that Plaintiff contends that it needed the Executable 195 source code to do this, it should have filed a motion to compel, but did not do so. Finally, the fact that its November 22, 2024 Infringement Contentions were served a mere five minutes before the deadline is particularly concerning.

Regarding the second factor, Executable 195 is important for the reasons that Defendant outlined. Despite this, because Plaintiff has also accused Executables 193 and 194, striking 195 will not completely eliminate Plaintiff's case, including as to the infringement period. In any event, the importance factor weighs against striking.

The third factor weighs in favor of striking. As Defendant correctly pointed out, the service of the updated contentions only 5 minutes before the discovery deadline effectively deprived it of a meaningful opportunity to conduct discovery related to the newly added Executable 195. On the other hand, Executable 195 is Defendant's product and it is already in possession of the technical information necessary to rebut the theory.

Finally, as discussed above neither party seeks a continuance, nor would one be appropriate.

The Court finds that the factors, on balance, weigh in favor of striking. Accordingly, the Motion to Strike is **GRANTED** to the extent that all sections of Plaintiff's November 22, 2024 Infringement Contentions concerning Executable 195 are **STRICKEN**.

This does not, however, end the inquiry as to whether striking is appropriate with respect to Dr. Govindaraj. A further problem potentially exists with respect to the timely served July Infringement Contentions: whether they even listed Executable 195 as an accused product.

### 2. Was Executable 195 an Accused Product in the Operative Infringement Contentions?

Throughout both its motion practice and oral argument, Plaintiff has repeatedly asserted that Executable 195 is accused in the July Infringement Contentions. *See* Dkt. No. 271 at 23-24 (Question from the Court: "Did your July contentions accuse executable 195?" Answer by Plaintiff: "Yes. . . .CLO's position has always been that all three executables [including 195] have been accused."); *see also* Dkt. No. 130 at 1 ("Defendant Linctex refuses to accept the fact that CLO has accused all versions of Linctex's Style3D software of infringement, including the three executable versions (i.e., 193, 194, and 195) . . . ."). Despite this, Plaintiff cannot point to anything in the July contentions showing this. The only versions of Style 3D seen in the July contentions are version 1.13.125 (*See e.g.* Dkt. No. 130-7 at 9-10), corresponding to Executable 193, and version 6.08.823 (*See e.g. id.* at 31), corresponding to Executable 194. Nowhere in the contentions does version 6.1.952, corresponding to Executable 195, appear.

Local Patent Rule 3-1(b) is clear:

> [T]he "Disclosure of Asserted Claims and Infringement Contentions" shall contain . . . [s]eparately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party is aware. *This identification shall be as specific as possible*. Each product, device, and apparatus *must be identified by name or model number, if known*.

PR 3-1(b) (emphasis added).

Here, as discussed in Section III.A.1 above, Defendant had already given Plaintiff an executable copy of version 195 (as well as version 193 and 194) in February 2024 (*See* Dkt. No. 103 at 2, 7))—some five months before Plaintiff served their amended July contentions—a point which Plaintiff does not dispute (*See generally* Dkt. No. 130). Thus, Executable 195 was "known" to Plaintiff well before it served its July contentions. Particularly troubling is that, by contrast, Plaintiff does specifically call out Executable 195 in its untimely November Infringement

8

Contentions. Dkt. No. 150-2 at 2 n.2. Based on the above facts, the Court sees no excusable reason why Plaintiff did not identify Executable 195 as an accused product in the July contentions.[2]

Executable 195 was not properly accused as an infringing product and, therefore, all sections of Dr. Govindaraj's opening report concerning Executable 195 are hereby **STRICKEN**.

### 3. Supplemental Briefing[3]

As discussed in Section I above, the Court allowed Plaintiff to serve a supplement to Dr. Govindaraj's opening report (Dkt. No. 235-5). *See supra* Section I.

#### a. Timeliness

In its supplemental brief, Defendant argues that even under Plaintiff's timely served July 26, 2024 Infringement Contentions, Dr. Govindaraj's infringement opinions on Executable 195 are still untimely. Dkt. No. 273 at 2. The basis for this argument is the combination of (1) that Plaintiff now allegedly argues that its infringement theories for Executable 195 are identical to what it had disclosed for Executable 194; and (2) that Plaintiff also failed to adequately disclose its infringement theories for Executable 194 in the July Infringement Contentions either. *See id.* at 3-5

The Court will not entertain this argument. Defendant's assertion that Plaintiff failed to adequately disclose its infringement theories for Executable 194 in the July Infringement

---

[2] Plaintiff frequently points to its previous reliance on Defendant's now withdrawn representation that Executable 194 is representative of Executable 195. *See e.g.* Dkt. No. 130 at 5. While this may have sufficed as an excuse with respect to infringement *theories* related to Executable 195, it in no way stands as an excuse for Plaintiff failing to identify Executable 195 as an accused *product* in the first place.

[3] As a general note: the Court gave leave to Defendant to file this supplemental brief to "address[] the supplement[al] report" of Dr. Govindaraj. Dkt. No. 269 at 2; Dkt. No. 271 at 43: 18-22 ("I'll direct the defendant to file any supplemental brief on [the instant Motion to Strike] *addressing the supplemental report* by Friday of next week, May 30, and Plaintiff can file any response to that supplemental brief by June the 4th.") (emphasis added). Accordingly, the Court will not consider Defendant's arguments found in its supplemental brief concerning issues outside of Dr. Govindaraj's supplemental report unless they properly flow from the issues which caused the Court to permit the supplemental report (and associated supplemental briefing) in the first place. In other words, to the extent that Defendant now brings new arguments that could have been brought in their original motions, those arguments are waived (again, unless they flow from the issues which caused the Court to permit the supplementation).

Contentions is something that is appearing for the first time in these supplemental briefs; it was not something Defendant argued in its original briefing. *See generally* Dkt. Nos. 103, 137. More to the point, this is an argument that Defendant could have, and should have, brought in those original briefs, and is not something that flows from the from the issues which caused the Court to permit the supplemental report and associated briefing. *See supra* footnote 3. Consequently, this new argument is forfeited. *See e.g. Intellectual Ventures II LLC v. Sprint Spectrum, L.P.*, 2019 WL 2959568, at *3 (E.D. Tex. Apr. 18, 2019).

Regardless of the above, however, as discussed in Section III.A.2, Executable 195 was never properly identified as an accused product in the July Infringement Contentions. Thus, the theory advanced by Dr. Govindaraj in his supplemental report is beyond the scope of Plaintiff's operative Contentions. Further, Plaintiff itself asserts that Dr. Govindaraj's supplemental report is concerned exclusively with Executable 195. Dkt. No. 279 at 2 ("Dr. Govindaraj's supplemental expert report . . . is entirely directed to Executable 195 . . . .").

Accordingly, the Motion to Strike Dr. Govindaraj's supplemental report on this basis is **GRANTED** and his supplemental report is hereby **STRICKEN** in its entirety.

### b. Sufficiency

Defendant also points out that "Dr. Govindaraj's supplemental report no longer accuses Executable 195 of infringing any claims of the '355 patent, and CLO has since withdrawn claims 4-5 of the '773 patent from its final election of asserted claims" (Dkt. No. 273 at 6-7 (emphasis omitted) (citing Dkt. No. 235-5 at ¶ 6; Dkt. No. 226 at 1)), but that, in his supplemental report, Dr. Govindaraj "continues to opine that 'Executable 195 infringes each of claims 1-11 of the '773 patent'" (*Id.* at 7 (emphasis omitted) (citing *e.g.* Dkt. 235-5 at ¶ 4)). Accordingly, Defendant moves the Court to strike those sections.

As discussed in Section III.A.3.a above, the entirety of Dr. Govindaraj's supplemental report has already been stricken. Accordingly, this issue is moot.

Defendant also seeks to have the Court strike Dr. Govindaraj's opening report with respect to those sections regarding the now-withdrawn representation discussed in Section I above, namely paragraphs 122 and 130. Dkt. No. 273 at 7. Plaintiff offers no responsive arguments to this. *See generally* Dkt. No. 279.

The Court finds that, in view of the Court's approval of Defendant's withdrawal of their stipulation regarding Executable 194 being representative of Executable 195, that former stipulation is not relevant. Accordingly, the Motion to Strike on this basis is **GRANTED**. Therefore, it is **ORDERED** that all of paragraph 130 and all but the first sentence of paragraph 122 of Dr. Govindaraj's opening report are hereby **STRICKEN**.[4]

### B. Dr. Govindaraj's Opinions on Willful and Indirect Infringement[5]

In the Motion, Defendant seeks to strike Dr. Govindaraj's opinions on willfulness and indirect infringement. Dkt. No. 103 at 11. It argues that "Dr. Govindaraj does not present any factual evidence in support of his induced infringement, contributory infringement, or willful infringement opinions. Instead, he simply states in a conclusory fashion that the legal standard governing the issue has been met." *Id.*

In response, Plaintiff argues that "Dr. Govindaraj's opinions on willful infringement and indirect infringement are limited to helping the trier of fact to understand the evidence . . . ." Dkt. No. 130 at 11-12. Plaintiff asserts that, in line with Fed. R Evid. 702, he is providing an assessment

---

[4] With respect to footnote 3 above, this is an item that flowed from the issues which caused the Court to permit the supplemental report and briefs.

[5] Defendant's arguments on these points in its supplemental brief merely re-allege what was found in the original briefing. Dkt. No. 273 at 8 ("For the reasons set forth in Linctex's original motion, the Court should strike the foregoing paragraphs of Dr. Govindaraj's opening report . . . ."). Accordingly, the Court will not re-tread this old ground. *See supra* footnote 3.

11

on these issues from a technical perspective, and that they "are based on Dr. Govindaraj's experience and understanding of the technology . . . ." *Id.* at 12.

The Court will assess this on an issue-by-issue basis.

### 1.  Induced Infringement

Starting with induced infringement, the totality of Dr. Govindaraj's opinion is as follows:

> In my opinion, in addition to Linctex's Accused Products directly infringing Claims 1-5, 8, 11-13, and 15-20 of the '448 Patent, Linctex induces its customers to infringe these claims. For example, by selling the Style3D software, and since Linctex has been aware of infringement since at least the filing of the Complaint in this action, Linctex is *acting with intent* to encourage customers to perform the claimed methods by operating the Style3D software in the infringing manner I have described above.

Govindaraj Opening Report at ¶ 434 (emphasis added by Court). His opinions for the '773 and '355 Patents are substantively identical. *See id.* at ¶¶ 262, 323.

The Court finds that these opinions are not proper because they are not helpful to the jury. "It is undisputed that it is improper for an *expert* to opine as to the subjective belief or intent of a corporate entity." *Gree, Inc. v. Supercell Oy*, No. 2:19-cv-71-JRG-RSP, 2020 WL 4059550, at *2 (E.D. Tex. July 20, 2020) (emphasis in original).

Here, this is precisely what Dr. Govindaraj is doing: conclusorily declaring that Defendant induces infringement by doing nothing more than selling the accused software which, in Dr. Govindaraj's view, somehow encourages customers to perform the claimed methods. Such a conclusory declaration, devoid of any support, amounts to nothing more than an opinion on the subjective state of mind of Defendant. While an expert is permitted to opine "on the underlying facts that may show a party's state of mind" (*See id.* at *2), Dr. Govindaraj, by contrast, does not cite to any underlying facts related to the elements specific to inducement.

Accordingly, the Motion to Strike on this basis is **GRANTED** and paragraphs 262, 323, and 434 are hereby **STRICKEN** from Dr. Govindaraj's opening report.

### 2. Contributory Infringement

Turning to the opinions on contributory infringement, Dr. Govindaraj opines that:

> [I]n addition to Linctex' s Accused Products directly infringing Claims 1-5, 8, 11-13, and 15-20 of the '448 Patent, Linctex contributes to the infringement of these claims by its customers. Linctex contributes to infringement of these claims by contributing to the infringement by selling the Style3D software to customers that also perform an act of direct infringement by operating the Style3D in the infringing manner that I have described above. Linctex has designed its Style3D software such that it is primarily intended to be used by the users to perform the steps of a patented method, as I have outlined above. Also, it is my understanding that Linctex has known of the infringing activities since at least the filing of the Complaint in this action. While there may be certain non-infringing uses of the Style3D software, it is primarily intended to be operated in the infringing manner that I have described above.

Govindaraj Opening Report at ¶ 435. His opinions for the '773 and '355 Patents are substantively identical. *See id.* at ¶¶ 263, 324.

Having reviewed these opinions of Dr. Govindaraj's report, the Court is satisfied that they are proper. Unlike with induced infringement, here, Dr. Govindaraj is offering an opinion that is based on underlying facts, with his assessment of those facts being within his realm of expertise. Specifically, he opines that Defendant contributes to infringement because it sells an accused software whose use is primarily an infringing one. Assessing the principal use of software is within a technical expert's realm of expertise. *See Gree*, 2020 WL 4059550, at *2. Defendant's remaining concerns are best resolved through cross examination.

Accordingly, the Motion to Strike on this basis is **DENIED**.

### 3. Willful Infringement

Finally, as to willful infringement, Dr. Govindaraj opines that:

13

> I am of the opinion that the Linctex's Accused Products infringe the asserted claims of the '773, '355, and '448 patents. I understand that CLO has asserted that Linctex has willfully infringed those patents. While I have not been asked to provide an opinion as to whether Linctex willfully infringed, I have reviewed and expressed opinions, from a technical perspective, about certain facts.
>
> I have reviewed various documents indicating that Linctex was given notice of the '773, '355, and '448 patents at least as early as the date of the filing of the Complaint for this action.
>
> In view of my analysis above, the infringement of the asserted claims of the asserted patents is very strong and clear. In fact, the infringement is so strong that if any reasonable person were to look at the asserted patents and continue selling the Style3D program, such acts would be nothing less than a *deliberate or intentional* continued infringement.

Govindaraj Opening Report at ¶¶ 436-438 (emphasis added by Court).

Having reviewed these opinions of Dr. Govindaraj's report, the Court finds that they are improper. Similar to his opinions on induced infringement, Dr. Govindaraj is conclusorily declaring that Defendant willfully infringes because "the infringement is so strong that if any reasonable person were to look at the asserted patents and continue selling the Style3D program, such acts would be nothing less than a deliberate or intentional continued infringement." There is nothing more than this; he does not cite to any underlying facts, nor does this opinion call upon his technical expertise. In short, it is nothing more than an impermissible opinion on Defendant's subjective state of mind, which is not helpful to the jurors, who can reach their own conclusions on this using common sense.

Accordingly, the motion to strike on this basis is **GRANTED** and paragraphs 436, 437, and 438 are hereby **STRICKEN** from Dr. Govindaraj's opening report.

### C. Dr. Govindaraj's Opinions on Claim Narrowing

In the Motion, Defendant seeks to strike Dr. Govindaraj's deposition testimony in which he opined that a claim amendment added during prosecution of the '773 patent is broadening. Dkt. No. 103 at 12-13. Defendant contends that this is an inappropriate opinion for him to offer. *See id.*

The Court agrees. Whether a claim amendment is narrowing is a question of law. *See Honeywell Int'l Inc. v. Hamilton Sundstrand Corp.*, 370 F.3d 1131 (Fed. Cir. 2004). Accordingly, it is improper for Dr. Govindaraj to opine on this.

Accordingly, the Motion to strike on this basis is **GRANTED** to the extent that Dr. Govindaraj's deposition testimony concerning whether a claim amendment is broadening or narrowing is stricken.

### D. Dr. Govindaraj's Opinions on Claims 8 and 14 of the '448 Patent[6]

In the Motion, Defendant seeks to strike Dr. Govindaraj's expert report as to his supposedly new theories of infringement for claims 8 and 14 of the '448 patent. Dkt. No. 103 at 13. Defendant claims that these were not disclosed in either Plaintiff's July 26, 2024 Infringement Contentions or the November 22, 2024 contentions. *Id.*

In response, Plaintiff argues that "Dr. Govindaraj cites to the same evidence, including source code, as in CLO's infringement contentions, in his expert report," and that the opinions in his report amount to elaboration on already disclosed theories. Dkt. No. 130 at 13-14.

The Court finds that Defendant has failed to demonstrate that Plaintiff is presenting new theories of infringement. By focusing on the individual elements within each claim, without regard to the overall theory of infringement by the accused products, and by trying to hold the expert to the evidence cited in the (as is relevant here) July contentions, Defendant misses the continuity in

---

[6] Plaintiff no longer asserts claim 8 of the '448 Patent. Dkt. No. 226 at 1.

15

the overall theory. Striking the expert's opinions on those individual elements at this late stage would cause great prejudice to Plaintiff, while Defendant has not made a convincing showing of prejudice to its defense. The Court is satisfied that Dr. Govindaraj's opinions amount to elaborations on theories of infringement sufficiently disclosed in Plaintiff's July Infringement Contentions.

Accordingly, the motion to strike on this basis is **DENIED**.[7]

### IV.   CONCLUSION

For the reasons discussed above: (1) all sections of Dr. Govindaraj's opening report concerning Executable 195; (2) all of paragraph 130 and all but the first sentence of paragraph 122 of Dr. Govindaraj's opening report; (3) paragraphs 262, 323, 434, 436, 437, and 438 in Dr. Govindaraj's opening report; (4) Dr. Govindaraj's deposition testimony concerning whether a claim amendment is broadening or narrowing; and (5) the entirety of Dr. Govindaraj's supplemental report are hereby **STRICKEN**. The Motion is otherwise **DENIED**.

**SIGNED this 6th day of July, 2025.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

---

[7] Defendant's further arguments on this point found in its supplemental briefing will not be considered. These are arguments that could have been brought in its original briefs and are, therefore, forfeited. *See supra* footnote 3.