## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| CLO VIRTUAL FASHION INC., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 2:23-cv-00274-JRG-RSP |
| ZHEJIANG LINGDI DIGITAL | § | |
| TECHNOLOGY CO., LTD. | § | |
| (D/B/A LINCTEX), | § | |
| Defendant. | § | |
| | § | |

## <u>MEMORANDUM ORDER</u>

Before the Court is the Motion to Exclude Reasonable Royalty and Lost Profits Opinions and Testimony of Defendant's Expert Matthew Farber, filed by Plaintiff CLO. **Dkt. No. 105**. For the reasons discussed below, the Motion is **GRANTED only in part**.

## I.    APPLICABLE LAW

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have

considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

Despite the above, however, "[e]ven if testimony is reliable, it may still be excluded if it relies on information that violates the [Federal] [R]ules [of Civil Procedure]." *Estech Sys. IP, LLC v. Carvana LLC*, 2023 WL 3292881, at *2 (E.D. Tex. May 5, 2023).

## II.   ANALYSIS

### A.  Reasonable Royalty Opinions

#### 1.  Non-Infringing Alternatives

In the Motion, Plaintiff argues that Defendant's damages expert—Dr. Matthew Farber—improperly considered the Executable 194 version of Plaintiff's software as a non-infringing alternative.  Improperly, because it too, had been accused of infringement. Dkt. No. 105 at 8-10.

Defendant responds, arguing that:

> [B]ecause the costs of the 2023 design-around were equal to or greater than the costs of any other design-around (including those not alleged to be infringing by CLO), his reasonable royalty "analysis can handle [the July 2023 design-around] being infringing or non-infringing." Dr. Farber's opinion that Linctex would have only been willing to pay CLO the development costs of a non-infringing alternative stand no matter which version of the software CLO is able to prove is infringing. Thus he has assumed infringement in his report.

Dkt. No. 126 at 4 (citing Dkt. No. 126-3 at 73).

The Court finds Defendant's arguments unpersuasive. Dr. Farber clearly utilizes Executable 194 as an available non-infringing alternative at several points in his report. *See e.g.* Dkt. No. 105-2 at ¶¶ 148, 166. However, Plaintiff's assertion that the entirety of Dr. Farber's report should be stricken is without justification.

It is well-established that an instrumentality accused of infringement cannot be used as a non-infringing alternative. *See*, *e.g.*, *AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1340 (Fed. Cir. 2015); *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1222 (Fed. Cir. 1995); *Datascope*

*Corp. v. SMEC, Inc.*, 879 F.2d 820, 824–25 (Fed. Cir. 1989). Thus, it was inappropriate for Dr. Farber to rely on Executable 194 as a non-infringing alternative.

Accordingly, the Motion to strike on this basis is **GRANTED** to the extent that all sections of Dr. Farber's expert report in which he uses Executable 194 as a non-infringing alternative are stricken.

### 2. Date of Hypothetical Negotiation

In the Motion, Plaintiff argues that Dr. Farber "commits the . . . mistake of failing to clearly articulate when the hypothetical negotiation would have occurred." Dkt. No. 105 at 10. In support of this, they point to the following excerpt from his damages report:

> I understand that the earliest hypothetical negotiation would take place on the eve of first infringement by Linctex. Linctex first released its accused product in 2018 or 2019. See Section 2.1.2. The first sale of an infringing product occurred on or around July 11, 2022. The hypothetical negotiation thus occurred no earlier than the first issuance date of the patents-in-suit (i.e., August 4, 2020) and no later than July 2022. However, the exact date within this range does not alter my opinion as to a reasonable royalty.

*Id.* (quoting Dkt. No. 105-2 at ¶¶ 125-56). Plaintiff claims that this is problematic because "Dr. Farber failed to articulate when the hypothetical negotiation would have occurred [across] a broad 2-year range" (*Id.*), but that he is required to do so lest such opinions be excluded (*Id.* at 11 (citing *LaserDynamics, Inc. v. Quanta Computers, Inc.*, 694 F.3d 51, 75 (Fed. Cir. 2012))).

In response, Defendant argues that Plaintiff "does not argue that Dr. Farber's chosen date is wrong; it only suggests that it was insufficiently clear." Dkt. No. 126 at 6 (emphasis omitted). They assert that "surgical precision is not required when selecting a hypothetical negotiation date, as courts have repeatedly acknowledged that reconstructing such a scenario 'necessarily involves an element of approximation and uncertainty.'" *Id.* (quoting *Wordtech Sys., Inc v. Integrated*

*Networks Sols., Inc.*, 609 F.3d 1308, 1319 (Fed. Cir. 2010) (internal quotation and citations omitted)).

As a preliminary matter, Defendant's citation to *Wordtech* is inapposite. There, the quoted language appeared in the context of the Federal Circuit discussing a calculation of *damages*, not the *timing* of the negotiation. By contrast, *LaserDynamics* is more on point: "[t]he correct determination of [the hypothetical negotiation] date is *essential* for properly assessing damages." *LaserDynamics*, 694 F.3d at 75 (internal quotations and citations omitted) (emphasis added). When the Federal Circuit later determined that their decision "alter[ed] the time period when the analysis under *Georgia–Pacific* is to take place," they "remand[ed] for a new trial on damages." *Id.* at 76. However, the Court in *LaserDynamics* defined the hypothetical negotiation date in the same was as Defendant's expert:  the eve of first infringement. The Court reversed because the district court improperly chose the date of filing of the lawsuit because damages couldn't begin in that case until suit was filed.

Defendant's expert has properly identified the range in which the eve of first infringement is to be found, and has opined that his hypothetical negotiation analysis would not change based upon where within that range the negotiation occurred.

Accordingly, the Motion to strike on this basis is **DENIED**.

### B.  Lost Profits Opinions

Plaintiff has represented that it is no longer seeking lost profits.

Accordingly, the Motion to strike on this basis is **DENIED AS MOOT**.

### C.  Opinions that Rely on Defendant's Technical Expert

In the Motion, Plaintiff argues that "[t]o the extent Dr. Farber's damages opinions are premised upon the non-infringing alternative opinions of Linctex's technical expert, Dr. Grinspun,

they should also be stricken" if Dr. Grinspun's report is stricken as to these items.  Accordingly, the Motion to strike on this basis is **GRANTED**.

      In conclusion, the Motion to Strike (Dkt. No. 105) is granted to the extent expressly provided above, and otherwise denied.

      **SIGNED this 8th day of July, 2025.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE