IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| CLO VIRTUAL FASHION INC., <br> Plaintiff, <br> v. <br> ZHEJIANG LINGDI DIGITAL TECHNOLOGY CO., LTD. (D/B/A LINCTEX), <br> Defendant. | § § § § § § § § § § § Civil Action No. 2:23-cv-00274-JRG-RSP |

## <u>MEMORANDUM ORDER</u>

Before the Court is the Motion to Exclude Certain Opinions of Defendant's Expert Eitan Grinspun, filed by Plaintiff CLO. **Dkt. No. 108**. For the reasons discussed below, the Motion is **GRANTED only in part**.

### I. BACKGROUND

Plaintiff CLO asserts that Defendant infringes three of its patents: U.S. Patent Nos. 10,733,773; 11,410,355; and 11,222,448. On December 31, 2024, Defendant filed the instant Motion seeking to strike Dr.Grinspun's opening report on a number of bases. Dkt. No. 108.

Following oral argument and a review of the relevant filings, the Court permitted Defendant to withdraw its previously made representation to Plaintiff that Executable 194 was representative of Executable 195 with respect to the relevant patented features. *See* Dkt. No. 229 at 2-3. Because of this ruling and other developments in the case, at a May 23, 2025 hearing the Court gave leave to Plaintiff to serve a supplement to the report of its technical expert, Dr. Govindaraj. Dkt. No. 269. Relatedly, the Court gave leave to Defendant to serve a supplement to Dr. Grinspun's report addressing Dr. Govindaraj's supplement. Dkt. No. 271 at 45-48.

## II. APPLICABLE LAW

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro*

*Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

Despite the above, however, "[e]ven if testimony is reliable, it may still be excluded if it relies on information that violates the [Federal] [R]ules [of Civil Procedure]." *Estech Sys. IP, LLC v. Carvana LLC*, 2023 WL 3292881, at *2 (E.D. Tex. May 5, 2023).

### III.   ANALYSIS

#### A.  Opening Report

Plaintiff moves the Court to strike portions of the report of Defendant's technical expert—Dr. Eitan Grinspun—on the ground that he relied upon references which were not disclosed in Defendant's invalidity contentions, were disclosed with an incorrect version, or are not authenticated. Dkt. No. 108 at 3.

### 1. ExactFlat and Optitex 3D Design Illustrator Invalidity Opinions

#### a. ExactFlat

In the Motion, Plaintiff argues that in his opening report, Dr. Grinspun cited to a reference identified as "ExactFlat" for the first time, but that Defendant had never disclosed ExactFlat in its invalidity contentions, or provided a reason for its late disclosure. *Id.*

In response, Defendant argues that it was not obligated to disclose ExactFlat because it is "not an anticipatory reference." Dkt. No. 128 at 3. Defendant contends that ExactFlat merely provides evidentiary support for its anticipation defense based on SolidWorks (the software to which ExactFlat is a plugin), and is therefore exempt from Local Patent Rule 3-3(a). *Id.* (citing *Allergan, Inc. v. Teva Pharms. USA, Inc.*, 2017 WL 11807449, at *3 (E.D. Tex. 2017) ("[t]he Rule plainly does not require the disclosure of other references that may provide evidentiary support for the anticipation defense")).

The Court finds that the ExactFlat reference was not timely disclosed and is therefore stricken.

Local Patent Rule 3-3(a) requires:

> Not later than 35 days after the Initial Case Management Conference with the Court, each party opposing a claim of patent infringement, shall serve on all parties its "Invalidity Contentions" which must contain the following information: The identity of each item of prior art that allegedly anticipates each asserted claim or renders it obvious.

P.R. 3-3(a)

Here, despite its assertions to the contrary, Defendant is plainly using ExactFlat as an anticipatory reference. It even admits as much in a separate response to Plaintiff's motion for summary judgment:

> "CLO argues that Dr. Grinspun combines SolidWorks with a separate software called ExactFlat. But ExactFlat is not a separate software. Instead, when Dr.

4

> Grinspun discusses 'SolidWorks using ExactFlat plug-in' in his report, he is 'looking at it as *one complete system*.' A person of ordinary skill in the art ("POSITA") at the time of the alleged invention would recognize plugins and macros such as <u>ExactFlat to be part of SolidWorks</u>."

Dkt. No. 129 at 7 (emphasis in original) (underlining added). Defendant's admission that it views ExactFlat to be a part of SolidWorks—which it contends *is* an anticipatory reference—is fatal to its argument that it was not obligated to disclose it in the invalidity contentions.

"The local patent rules exist to further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases, not to create supposed loopholes through which parties may practice litigation by ambush." *Computer Acceleration Corp. v. Microsoft Corp.*, 503 F. Supp. 2d 819, 822 (E.D. Tex. 2007). They "are essentially a series of case management orders," and "the exclusion of evidence is often an appropriate sanction for the failure to comply with such deadlines." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1363, 1369 (Fed. Cir. 2006).

District courts consider four factors when determining whether to exclude evidence that was not timely disclosed: (1) the explanation for the failure to identify the information; (2) the importance of the information; (3) potential prejudice in allowing the information; and (4) the availability of a continuance to cure such prejudice. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693-RWS-RSP, 2023 WL 6609324, at *3 (E.D. Tex. Oct. 9, 2023)

As to the first factor: as discussed above, Defendant failed to disclose ExactFlat until it appeared in Dr. Grinspun's opening report and has no valid explanation. Accordingly, this factor weighs in favor of striking ExactFlat from Dr. Grinspun's report.

As to the second factor: the importance of the evidence at issue, there is no doubt that the combination of ExactFlat with SolidWorks is important to Defendant's invalidity arguments. Accordingly, this factor weighs against striking.

Equal, if not even greater in weight than factor two, is the prejudice this causes Plaintiff. Because discovery is now closed and the case is on the eve of trial, Plaintiff has been deprived of its opportunity to conduct any discovery on ExactFlat. Accordingly, the third factor heavily favors striking.

As to the fourth factor: neither party seeks a continuance (*See* Dkt. No. 108; *compare* Dkt. No. 128), nor does the Court find a continuance would be appropriate since this case is on the eve of trial.

The Court finds that the factors, on balance, weigh in favor of striking. Accordingly, the Motion to Strike is **GRANTED** to the extent that all portions of Dr. Grinspun's report regarding ExactFlat are stricken.

### b. Optitex 3D Illustrator

The parties arguments regarding the Optitex 3D Illustrator reference track their arguments for ExactFlat.

Accordingly, for the reasons provided above, the Motion to Strike is **GRANTED** to the extent that all sections of Dr. Grinspun's report regarding Optitex 3D Illustrator are stricken.

### 2. Adobe Illustrator CS 6

In the Motion, Plaintiff argues that Dr. Grinspun relies on the wrong version of Adobe Illustrator CS 6—version 16.0.0—but that Defendant's invalidity contentions do not specify a version, and with respect to the '448 Patent, the only variant that appears is Adobe Illustrator 2024. Dkt. No. 108 at 4 (citing Dkt. Nos. 108-3; 108-7). Plaintiff contends that this is "an improper attempt to swap out different prior art." *Id.*

In response, Defendant argues that Plaintiff was given proper notice of Adobe Illustrator CS 6 because, in its July 2024 Invalidity Contentions, it stated that it was relying on a version of

Adobe Illustrator that was publicly available "[b]y 2012." Dkt. No. 128 at 7-8 (quoting 128-9 at p. 31). Defendant further argues that "as part of its P.R. 3-4 Prior Art Production in January 2024, Linctex had already produced videos from Adobe Illustrator CS6—the same 2012 version that Dr. Grinspun relied upon in his report—demonstrating the claimed features of the '448 patent." *Id.* at 8 (citing Dkt. Nos. 128-10 (showing the same "Version 16.0.0" at 00:01 as Ex. QQ of Dr. Grinspun's report); 128-11 ("Illustrator CS6 Measuring.mov," showing the same version at 00:04)).

The Court finds that Defendant did not properly disclose the version of Adobe it relied on. The local patent rules require that a party identify each reference *with specificity*. *See* P.R. 3-3. Simply stating that you are using a version of Adobe that was public "by 2012" and using the version that an expert later relies on in a video without specifically calling it out is not sufficient. As before, the Court assesses this under the four-factor test.

As to the first factor: as discussed above, Defendant failed to properly disclose the version of Adobe that Dr. Grinspun's opening report relied upon. Accordingly, this factor weighs in favor of striking.

As to the second factor: Adobe Illustrator is used prevalently throughout Dr. Grinspun's report, and is therefore a major component of his analyses and opinions. Accordingly, this factor weighs against striking.

As to the third factor: the Court finds that, as with ExactFlat and Optitex 3D Illustrator above, Plaintiff is prejudiced by its inability to conduct any discovery on version 16.0.0. Cutting against this, however, is the fact that Defendant's prior art production did utilize the version the Dr. Grinspun later relied on and it is identifiable in the videos. Accordingly, this factor is neutral.

On balance, the factors weigh against striking. Accordingly, the Motion to Strike on this

basis is **DENIED**.

### 3. Optitex Pattern Design Solution and SolidWorks as Prior Art

As discussed in the Court's Order on Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 289), Optitex Pattern Design Solution and SolidWorks have sufficient basis to qualify as prior art. Accordingly, the Motion to Strike on this basis is **DENIED**.

### 4. Dr. Grinspun's Opinions on Claim Narrowing or Broadening

In the Motion, Plaintiff argues that Dr. Grinspun is impermissibly opining on the meaning of a term construed by the Court during *Markman*. Dkt. No. 108 at 8-9. Specifically, it contends that Dr. Grinspun is contradicting the Court's construction of the terms "substantially different" and "substantially equal" as being not indefinite by stating that

> I understand that CLO contends that: "substantially equal" is a definite term of approximation with plain and ordinary meaning; a POSITA would know that two segments that when sewn together would not produce wrinkles are considered to have "substantially equal" length; a POSITA would know that the allowable difference in length would depend on the type of fabric, fabric parameters, and user-provided parameters; and, the written description provides examples of one inch or one centimeter for two kinds of fabric.

*Id.* at 9 (quoting Dkt. No. 108-2 at ¶ 973).

Defendant responds, arguing that Dr. Grinspun is merely offering opinions on the plain and ordinary meaning of "substantially equal" and how, under that meaning, the term lacks enablement or written description support. Dkt. No. 128 at 10-11. In support of this, it points to the preceding paragraph in which he says "the specification … *lacks written description support* for and *does not enable* the limitation." *Id.* at 11 (quoting Dkt. No. 108-2 at ¶ 972). Defendant contends that "[n]owhere in the paragraphs did Dr. Grinspun opine that the term "substantially equal" is indefinite, nor do he reference the word "indefinite" at all." *Id.* Finally, in the sur-reply, Defendant

8

agreed to withdraw the first sentence of ¶972 and all of ¶974 of Dr. Grinspun's opening report. Dkt. No. 154 at 3.

With the withdrawals Defendant has made, the Court turns to any other issues in the paragraphs in dispute. The Court notes that the above quoted language appears within a section entitled "Lack of Written Description and Enablement" (Dkt. No. 108-2 at p. 434), and that the surrounding context of the paragraphs at issue within this section makes it clear that they are directed toward such an argument (*see id.* at ¶¶ 970-992). However, that paragraph 973 states "I understand that CLO contends that: 'substantially equal' *is a definite term* of approximation with plain and ordinary meaning" is problematic. It is irrelevant to written description and enablement that "substantially different" and "substantially equal" are definite terms. Further, Dr. Grinspun's assertion that "CLO *contends* that: 'substantially equal' is a definite term" is also irrelevant: whether Plaintiff contends for or against this, or even whether Defendant contends for or against this, has no bearing; the terms are definite, as determined by the Court. This is the end of it, and the Court has already said as much in the Claim Construction Order:

> the parties should ensure that all testimony that relates to the terms addressed in this Order is constrained by the Court's reasoning. However, in the presence of the jury the parties should not expressly or implicitly refer to each other's claim construction positions and should not expressly refer to any portion of this Order that is not an actual construction adopted by the Court.

Dkt. No. 77 at 34 (emphasis added).

Accordingly, the Motion to Strike is **GRANTED** to the extent that the following language is stricken from paragraph 973: "I understand that CLO contends that: "substantially equal" is a definite term of approximation with plain and ordinary meaning."

### B. Rebuttal Report

Plaintiff also moves the Court to strike portions of Dr. Grinspun's rebuttal report on the bases that portions are based on previously undisclosed information or because they are unreliable. Dkt. No. 108 at 4.

#### 1. Infringement Allegations Opinions

In the Motion, Plaintiff argues that "Dr. Grinspun unfairly attempts to criticize [several] aspects of Dr. Govindaraj infringement opinions" and that those criticisms "have no support, and should be excluded as baseless and unreliable." Dkt. No. 108 at 9.

First, Plaintiff asserts that Dr. Grinspun stated that "… I did not find any reference to 'Check Sewing Length' in CLO's operative infringement contentions from July 2024, although I did find references to 'Free Sewing' mode in that document" (*Id.* (quoting Dkt. No. 108-17 at ¶ 139)), but that this is supposedly contradicted by Plaintiff's July 2024 Infringement Contentions, which "clearly show the 'Check Sewing Length' feature" (*Id.* at 9-10 (citing Dkt. No. 108-16 at p. 14)).

Second, Plaintiff asserts that Dr. Grinspun stated that "…it is my opinion that CLO did not identify V6.1.952 [Executable 195] of Style3D as an accused product until November 22, 2024" (*Id.* at 10 (quoting Dkt. No. 108-17 at ¶ 138)), but that "Dr. Govindaraj explained that the source code for the July 2023 Version of Style3D is representative of the source code for the December 2023 Version of Style3D" (*Id.* (citing Dkt. No. 108-14 at ¶ 122)).

Third, Plaintiff asserts that "Dr. Grinspun opines that Dr. Govindaraj presented new infringement theories not disclosed in CLO's infringement contentions" and that the Court should strike these because, they too, are unfounded. *Id.* at 11 (citing Dkt. No. 108-17 at ¶¶ 137-139).

10

In response to all three arguments, Defendant argues that Plaintiff's position merely amounts to Dr. Grinspun and Dr. Govindaraj having different opinions and coming to different conclusions. Dkt. No. 128 at 11. They assert that this renders Dr. Grinspun's assertions as fodder for cross-examination, but that striking would be inappropriate. *Id.* (citing *Mobility Workx, LLC v. Cellco P'ship*, 2019 WL 5721814, at *8 (E.D. Tex. Nov. 5, 2019)

The Court finds that these paragraphs are irrelevant for the issues being presented to the jury, especially in view of the striking of the claims against Executable 195.  Accordingly, the motion to strike is **GRANTED** as to Paragraphs 137-139 of Dr. Grinspun's rebuttal report.

### 2. Non-Infringing Alternative Opinions

Plaintiff argues that Dr. Grinspun's opinions on non-infringing alternatives in his opening[1] and rebuttal reports should be stricken as inadequately disclosed and untimely respectively. Dkt. No. 108 at 11.

#### a. Opening Report

In the Motion, Plaintiff argues that Dr. Grinspun's opinion in its totality is:

> I understand Linctex has identified a number of non-infringing alternatives and design-arounds for the asserted patents. I further understand that CLO has not challenged in substance these non-infringing alternatives, but otherwise contends that there are no non-infringing alternatives. I reserve the right to offer rebuttal opinions on the non-infringing alternatives that Linctex has identified—and implemented—once I have reviewed CLO's position.

*Id.* at 12 (quoting Dkt. No. 108-2 at ¶1004). They contend that this is not an opinion but a mere "placeholder," which fails to address non-infringement, availability, or acceptability. *Id.* They assert that this is insufficient under both FRCP Rule 26 and FRE 702. *Id.* (citing *Longhorn HD LLC v. NetScout Sys., Inc.*, 2022 WL 991696, at *4 (E.D. Tex. Mar. 31, 2022)).

---

[1] The Court is unclear on why this argument is appearing in Plaintiff's section concerned with Dr. Grinspun's rebuttal report.

Defendant responds, arguing that Plaintiff has suffered no prejudice and that, to the extent that it claims that it did, there is no evidence that Plaintiff sought to amend its own expert's report in light of the findings of Dr. Grinspun, and it should have filed a motion to this effect. Dkt. No. 128 at 12.

The Court finds that Dr. Grinspun's opinion in his opening report is insufficient and that Defendant's attempt to move the burden onto Plaintiff is without merit. As this Court has previously said, a reliable opinion on whether a product is or is not a non-infringing alternative is incomplete without opining whether the product is both "available" and "acceptable" (or whether there are not any "available" or "acceptable" alternatives). *Longhorn HD LLC. v. NetScout Sys., Inc.*, 2022 WL 991696, at *4 (E.D. Tex. Mar. 31, 2022). Because Dr. Grinspun offers no argument or opinion to this effect, Defendant has consequently not shown that its expert's opinions are reliable or helpful to the jury.

Accordingly, the Motion on this basis is **GRANTED** and paragraph 1004 is stricken.

### b. Rebuttal Report

In the Motion, Plaintiff argues that, because Defendant did not offer non-infringing alternative positions in his opening report, his inclusion of them in his rebuttal report renders them untimely. Dkt. No. 108 at 13 (citing *Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, 2017 WL 2869344, at *3 (E.D. Tex. Apr. 20, 2017)).

Defendant responds, arguing that Plaintiff had already been put on sufficient notice of the factual basis of Dr. Grinspun's NIA opinions. Dkt. No. 128 at 13. In support of this, they point to February 2024 Interrogatory responses in which they identified the software executables embodying the non-infringing alternatives in the forms of Executable 194 and Executable 195. *Id.* (citing Dkt. No. 128-18 at p. 20).

As a preliminary matter, the Executables 194 and 195 that Defendants point to are not valid NIAs, as discussed in the Court's Order on Plaintiff's Motion to Exclude Reasonable Royalty and Lost Profits Opinions (Dkt. No. 292). Turning to the parties' arguments, that Defendant may have disclosed the factual basis for what would eventually become Dr. Grinspun's NIA opinions is insufficient. Plaintiff needed to be able to present a rebuttal to Dr. Grinspun's *opinions*, not merely the factual bases underlying them. By waiting until his rebuttal report to inform Plaintiff of his opinions, Defendant effectively ambushed Plaintiff by depriving them of a meaningful opportunity to address Dr. Grinspun's NIA *opinions*. *See generally Godo Kaisha*, *supra*, 2017 WL 2869344.

Accordingly, the Motion on this basis is **GRANTED,** and the portions of Dr. Grinspun's rebuttal report regarding non-infringing alternatives are stricken.

### 3.  Opinions on No Infringement Occurring in the United States

In the Motion, Plaintiff argues that Dr. Grinspun's opinions casting doubt on whether there is infringement in the United States should be stricken because his "opinion is directly contradicted by evidence in the record." Dkt. No. 108 at 14. Plaintiff asserts that Dr. Grinspun ignores the fact that Defendant's U.S. customers use the accused Style3D software, and that there is no doubt there were U.S. sales of Style3D to U.S. customers. *Id.* In support of this, it points to Defendant's own damages expert—Dr. Farber—who calculated that Defendant's U.S. sales of the accused Style3D software was $121,457 from 2022 to 2024. *Id.* (citing Dkt. No. 108-19). It further points to Defendant's interrogatory responses, which reported U.S. sales. *Id.* at 15 (citing Dkt. No. 108-18 at p. 57). Thus, contends Plaintiff, "Dr. Grinspun's opinions on infringement in the U.S. should be stricken as unsupported and unreliable." *Id.*

In response, Defendant argues that "contrary to CLO's claims, there is no contradiction between the fact that Linctex sold the accused Style3D software to the U.S. on the one hand, and

13

Dr. Grinspun's opinion on the other hand that CLO presented no evidence to show any Linctex *employees* "have *performed each step of the method claims* for any of the three asserted patents." Dkt. No. 128 at 14-15. Defendant acknowledges the U.S. sales but argues that "nothing in the record suggests that any copy of the accused software had been used to perform each and every step of the asserted method claims." *Id.* at 15.

For similar reasons as those discussed in the Court's Order on Defendant's Motion for Summary Judgment of Non-Infringement (Dkt. No. 287 at Sections III.C-D), the Court finds that the opinions should not be stricken. Both sides have presented evidence supporting, and cutting against, direct infringement in the United States. A genuine dispute remains for trial.

Accordingly, the Motion to Strike on this basis is **DENIED**.

In summary, the motion to strike the reports of Dr. Grinspun is **GRANTED** only as to:

(1) All portions regarding ExactFlat and Optitex 3D Illustrator;

(2) Paragraph 973 of the opening report (the 1st clause of the 1st sentence) (Dkt. No. 108-2 at 436);

(3) Paragraph 1004 of the opening report;

(4) Paragraphs 137 – 139 of the rebuttal report; and

(5) All portions of the rebuttal report regarding non-infringing alternatives.

The motion is otherwise denied.

**SIGNED this 9th day of July, 2025.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE